UNITED STATES of America,
Plaintiff,

v.

Gordon GANT, Defendant.

Civil Action No. 02–2312 (RMU).

United States District Court,
District of Columbia.

June 17, 2003.

Karen A. Rivera, U.S. Department of Justice, Civil Division, Washington, DC, for Plaintiff.

### *MEMORANDUM OPINION*

URBINA, District Judge.

GRANTING THE PLAINTIFF'S MOTION FOR EN-TRY OF DEFAULT JUDGMENT AND ASSESS-ING A CIVIL PENALTY AGAINST THE DE-FENDANT

### I. INTRODUCTION

Plaintiff United States brings this action against defendant Gordon Gant, a former Census Bureau employee of the Department of Commerce, for failure to meet his obligation under the Ethics in Government Act ("EIGA"), 5 U.S.C. app. 4 § 101 *et seq.*, to file a financial disclosure report within 30 days of termination of his employment. The matter now before the court is the plaintiff's motion for entry of default judgment. Because the defendant

has been essentially unresponsive and because the defendant has knowingly and willfully violated the EIGA, the court grants the plaintiff's motion, enters default judgment and assesses a civil penalty in the amount of $11,000 against the defendant.

### II. BACKGROUND

On January 20, 2001, the defendant terminated his employment as a Senior Advisor with the Bureau of the Census within the Department of Commerce ("the Department"). Compl. ¶ 11; Pl.'s Mot. for Entry of Default J. ("Pl.'s Mot.") at 1. Approximately one month before the defendant departed, the Ethics Division of the Department's Office of the Assistant General Counsel sent the defendant a memorandum reminding him of his obligation under the EIGA to file a financial disclosure report within 30 days of the date of termination of his employment. Compl. ¶ 13; Pl.'s Mot. at 1, Ex. 1. On the date of his departure, the Acting Director for the Office of Executive Resources sent the defendant a second memorandum reminding him of his obligation to file the report. Compl. ¶ 14; Pl.'s Mot. at 2, Ex. 2.

Despite these written reminders, the defendant did not file the financial disclosure report by February 20, 2001, the date occurring 30 days after the termination of his employment. Compl. ¶ 15; Pl.'s Mot. at 2. On February 28, 2001, one week after the missed deadline, the Assistant General Counsel for Administration sent the defendant a certified letter, return receipt requested, noting that the defendant had failed to timely file his report, informing him of the availability of extensions, and setting forth the consequences of failure to file a report. Compl. ¶ 16; Pl.'s Mot. at 2, Ex. 3. Although the letter was accepted and the return receipt was signed by a Dolores R. Gant, the defendant did not file

the report. Compl. ¶ 17; Pl.'s Mot. at 2, Ex. 4. On March 26, 2001, the Assistant General Counsel sent the defendant a second certified letter noting his failure to file the report, and informing him that he owed a $200 late-filing fee. Compl. ¶ 16; Pl.'s Mot. at 2, Ex. 5. Although this letter also was accepted, with the return receipt this time signed by the defendant, the defendant did not file the report. Compl. ¶ 17; Pl.'s Mot. at 2, Ex. 6. Five months later, on September 4, 2001, the Assistant General Counsel sent the defendant a third certified letter warning that if the Department did not receive a report from the defendant within 30 days, the Department would refer the matter to the Department of Justice. Pl.'s Mot. at 2, Ex. 7. Again, this letter was accepted, with the return receipt signed by Dolores R. Gant. Pl.'s Mot. at 2, Ex. 8. The defendant nonetheless failed to file the report. Compl. ¶ 17.

On November 21, 2002, the plaintiff filed its complaint alleging that the defendant violated the EIGA by knowingly and willfully failing to file a financial disclosure report and requesting civil penalties of $11,000 against the defendant. Compl. at 3. On December 1, 2002, the defendant was served. Aff. of Service. On December 26, 2002, three days after the deadline for a responsive pleading to the complaint, the defendant left a message with the plaintiff's counsel stating that he had received the summons and a copy of the complaint and would be contacting the court to request a court-appointed attorney so that he could "plead not guilty." Pl.'s Mot. at 2–3, Ex. B (Rivera Aff.) ¶ 3. On the same day, the plaintiff's counsel left a voice-mail message for the defendant at his office, explaining that his response to the complaint was past due and that to avoid entry of default, the defendant should seek an extension of time to respond. *Id.* at 3, Ex. B (Rivera Aff.) ¶ 4. The plaintiff's counsel also attempted to reach the defendant at his home, leaving a message with her phone number. *Id.* at 3, Ex. B (Rivera Aff.) ¶ 5. The defendant did not return either message. *Id.* at 3, Ex. B (Rivera Aff.) ¶¶ 4–5. On January 22, 2003, the plaintiff's counsel sent the defendant a letter reiterating his obligation to respond to the complaint and stating that the plaintiff would move for entry of default judgment if the defendant did not respond. *Id.* at 3, Ex. B (Rivera Aff.) ¶ 6. The defendant did not respond. *Id.* at 3.

On February 4, 2003, the plaintiff moved the court for entry of default against the defendant.[1] On February 25, 2003, the clerk of the court entered default against the defendant. On March 17, 2003, the plaintiff moved the court for entry of default judgment against the defendant.[2] Pl.'s Mot. On May 28, 2003, the court issued an order directing the defendant to show cause as to why the court should not

---

1. Although the plaintiff styles its February 4, 2003 motion as a motion for entry of default judgment, the court will consider it a motion for entry of default, the first step in the two-step process for entry of default judgment. *E.g., Hagen v. Sisseton–Wahpeton Cmty. College,* 205 F.3d 1040, 1042 (8th Cir.2000); *Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir. 1981); *see also* Pl.'s Mot. at 3 ("a plaintiff may move for entry of a defendant's default ... [and o]nce a defendant's default is entered, the Court may enter judgment in default").

2. The docket in this case reflects the filing of two documents on March 17, 2003: a "First Motion for Default Judgment," and a "Motion for Default Judgment." For purposes of clarity, the court notes that the "First Motion for Default Judgment" is the plaintiff's two-page motion for default judgment, while the "Motion for Default Judgment" consists of the plaintiff's memorandum of points and authorities along with various supporting exhibits and affidavits.

grant the plaintiff's request for default judgment in the amount of $11,000. Order dated May 28, 2003. The defendant having failed to respond, the court now turns to the plaintiff's motion for entry of default judgment.

## III. ANALYSIS

### A. Legal Standard for Entry of Default Judgment under Rule 55(b)(2)

■ A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n. 5 (D.C.Cir.1980). Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED.R.CIV.P. 55(a). Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. FED.R.CIV.P. 55(b)(2).

■ Because courts strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, default judgments are not favored by modern courts. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir. 1980). Accordingly, default judgment usually is available "only when the adversary process has been halted because of an essentially unresponsive party[, as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Jackson*, 636 F.2d at 836 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).

■ Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C.2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr.13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir.1986). However, default does not establish liability for the amount of damages claimed by the plaintiff. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F.Supp. 486, 491 (D.D.C.1994), *vacated on other grounds*, 62 F.3d 1469 (D.C.Cir.1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F.Supp.2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999). The court has considerable latitude in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). To fix the amount, the court may conduct a hearing. FED.R.CIV.P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir.1997).

### B. The Court Enters Default Judgment and Assesses a Civil Penalty of $11,000 Against the Defendant

■ In this case, notwithstanding service on the defendant and the plaintiff's subsequent communications with the defendant, the defendant has failed to respond to the complaint. Six months have passed since the filing of the complaint, and three months have passed since the Clerk's entry of default. To date, the defendant has filed no response or taken any other action indicating an intent to

respond. Accordingly, because the defendant is a "totally unresponsive party," the court concludes that default judgment against the defendant is appropriate. *Jackson,* 636 F.2d at 836.

 With regard to the plaintiff's request for a civil penalty, after examining the record the court determines that there is a basis for imposing a civil penalty of $11,000 against the defendant. *Transatlantic Marine Claims Agency,* 109 F.3d at 111. The EIGA establishes financial reporting requirements for key personnel in each of the three branches of the federal government. *United States v. Rose,* 28 F.3d 181, 183 (D.C.Cir.1994) (citing to the EIGA prior to its consolidation at 5 U.S.C. app. 4 § 101 *et seq.*). Under section 101 of the EIGA, all executive-branch employees at pay grade GS 15 or above must file a highly detailed financial statement within 30 days of the termination of their federal employment. 5 U.S.C. app. 4 § 101(e), (f); *see also Washington Post Co. v. Dep't of Health & Human Servs.,* 690 F.2d 252, 265 (D.C.Cir.1982). Section 104(a) of the EIGA authorizes the Attorney General to bring a civil action in federal district court against any individual "who knowingly and willfully fails to file or report any information that such individual is required to report" under the EIGA, and states that the court may assess a civil penalty of up to $11,000 against that individual.[3] 5 U.S.C. app. 4 § 104(a); *Rose,* 28 F.3d at 183–84. An individual knowingly and willfully fails to comply with the EIGA's filing requirements when that individual "intentionally disregards the statute or is indifferent to its requirements." *United States v. Tarver,* 642 F.Supp. 1109, 1111 (D.Wyo.

1986); *see also United States v. Bank of New England, N.A.,* 821 F.2d 844, 856 (1st Cir.1987) (defining "willfulness" for purposes of federal regulatory statutes as a disregard for the governing statute and an indifference to its requirements).

In this case, the record indicates that the defendant is an executive-branch employee subject to the reporting requirements of the EIGA. Compl. ¶¶ 10, 12; Pl.'s Mot. at 4, Ex. 1. It also demonstrates that, having received two departmental memoranda, three certified letters from the Department, a summons and copy of the plaintiff's complaint, two voice-mail messages, a follow-up letter from the plaintiff's counsel, the defendant had notice of his obligation to file a financial disclosure report pursuant to the EIGA, as indicated by his December 26, 2002 phone call to the plaintiff's counsel. Compl. ¶¶ 13–14, 16; Pl.'s Mot. at 1–3, Exs. B (Rivera Aff.), 1–8. Because the defendant at best was indifferent to the EIGA's filing requirements, the court concludes that the defendant knowingly and willfully failed to comply with the EIGA. *Tarver,* 642 F.Supp. at 1111; *Bank of New England,* 821 F.2d at 856.

For this failure to comply, the plaintiff requests that the court assess the maximum civil penalty of $11,000 against the defendant. Pl.'s Mot. at 4–5. In default-judgment cases involving statutes that leave the amount of the civil penalty to the discretion of the court, courts generally have tailored the penalty to the offense and attendant circumstances. *E.g., Sec. & Exch. Comm. v. Abacus Int'l Holding Corp.,* 2001 WL 940913, at *5 (N.D.Cal.

---

**3.** The text of section 104(a) states that the court may assess "a civil penalty in any amount, not to exceed $10,000." 5 U.S.C. app. 4 § 104(a). The Federal Civil Penalties Inflation Adjustment Act of 1990, however, requires periodic adjustments of civil monetary penalties for inflation via regulation. 28 U.S.C. § 2461 note. Accordingly, the maximum civil penalty under section 104(a) for EIGA filing-requirement violations occurring on or after September 29, 1999 now stands at $11,000. 5 C.F.R. § 2634.701(b).

Aug.16, 2001) (assessing the maximum statutory civil penalties requested against a defendant whose securities-law violations were numerous, ongoing, and created a significant risk of substantial loss to investors); *Broadcast Music, Inc. v. DeGallo, Inc.*, 872 F.Supp. 167, 169 (D.N.J.1995) (assessing one-fourth of the statutory civil penalty requested against a defendant whose copyright infringement was limited to a single public place); *Tarver*, 642 F.Supp. at 1112 (assessing one-tenth of the maximum statutory civil penalty requested against a defendant who initially failed to file an EIGA report but did so after being threatened with court action); *Davis v. Williams*, 622 F.Supp. 386, 388 (W.D.N.Y. 1985) (assessing the maximum statutory civil penalties requested against a defendant whose labor-law violations were flagrant). Here, notwithstanding the many written and verbal reminders that both the Department and the plaintiff gave the defendant, the defendant failed to comply with his EIGA obligations. Because the defendant's violation of the EIGA filing requirements is flagrant and ongoing, the court assesses the full civil penalty of $11,000 against the defendant.

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for entry of default judgment and assesses a civil penalty in the amount of $11,000 against the defendant. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of June, 2003.