Cynthia Miranda MORRISON,
Appellant,

v.

INTERNATIONAL PROGRAMS CON-
SORTIUM, INC. and Kathleen M.
Hanlon, Appellees.

No. 00–7150.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 19, 2001.

Decided June 22, 2001.

Jerry R. Goldstein argued the cause for the appellant.

Ernest C. Baynard, III argued the cause for the appellees.

Before: EDWARDS, Chief Judge, STEPHEN F. WILLIAMS and KAREN LeCRAFT HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Cynthia Miranda Morrison appeals the district court's denial of her motion for partial summary judgment and its grant of the appellees' motion for judgment as a matter of law. She also challenges the court's evidentiary ruling excluding documentation of an IRS assessment and levy. For the reasons that follow, we affirm the district court's denial of summary judgment and its evidentiary ruling but reverse the court's grant of judgment as a matter of law.

## I. Background

In June 1994 appellee Katie Hanlon, president of appellee International Programs Consortium, Inc. (IPC), hired Morrison as a consultant to perform recruiting and management tasks pursuant to a series of written contracts. After the contracts expired in late 1994 Morrison continued to perform consulting work for IPC and also began to perform various office tasks and was required to prepare daily activity sheets for Hanlon. Morrison, however, continued to consider herself an independent contractor and submitted invoices to IPC on "C. Miranda Morrison Consulting" letterhead.

On July 5, 1995 Morrison wrote Hanlon to notify her that as of August 1, 1995 she "will no longer be offering [her] services as a consultant to IPC." Letter from C. Miranda Morrison to Kathleen M. Hanlon (July 5, 1995), *reprinted at* JA 319. She continued to work for IPC during July, concentrating primarily on a U.S. Agency for International Development (USAID) delivery order (the Moldova project). On July 28, 1995 Hanlon terminated Morrison for failing to take direction as well as for taking days off from work without permission. Morrison subsequently submitted her July 1995 time and expense statements which reflected $4061.64 for hours worked (22 days at $184.62 per day) and $228.26 for expenses she paid on behalf of IPC. Neither Hanlon nor IPC paid Morrison for her time or expenses.

On January 8, 1996 Morrison filed with the IRS District Director a request for "Determination of Employee Work Status for Purposes of Federal Employment Taxes and Income Tax Withholding" on IRS Form SS–8. IPC responded to the IRS's subsequent request for further information through its certified public accountant, ex-

plaining why it believed Morrison to be an independent contractor while she worked for IPC. The IRS District Director then determined that under 26 U.S.C. § 3121(d)(2) Morrison was an employee rather than an independent contractor. The determination noted, however, that "[a]s we are not in a position to personally judge the validity of the facts provided, our determination is based on the information presented." Letter from Michael M. Greenspan, IRS District Director, to Kathleen M. Hanlon (July 1, 1996), *reprinted at* JA 356. It explained that "[w]e have submitted an Information Report to the IRS District Office having examination jurisdiction for your area. It may be necessary to initiate an examination of your Federal employment taxes in this matter." *Id.* The IRS ultimately assessed taxes and penalties totaling $3530.64 against IPC on the ground that Morrison had been an IPC employee during the entire time she worked for IPC in 1995. The IRS subsequently levied on IPC's bank account to satisfy the assessment. Neither Hanlon nor IPC appealed the IRS assessment or levy.

On August 14, 1997 Morrison brought suit in the district court against the appellees,[1] alleging that she had been an IPC employee in 1995 and that the appellees had violated (a) the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216, by failing to pay her minimum wages and overtime for weeks in which she worked more than 40 hours in July 1995 (Count I), (b) the D.C. Payment and Collection of Wages Law, D.C.Code §§ 36–101 *et seq.*, by failing to pay her for July wages and expenses advanced on behalf of IPC (Count II), (c) the D.C. Minimum Wage Act, D.C.Code §§ 36–220 *et seq.*, by failing to pay her

minimum wages and overtime (Count III) and (d) its contractual obligation to reimburse her for $228.26 in expenses that she incurred on behalf of IPC (Count IV). Before trial Morrison sought partial summary judgment on counts I, II and III, maintaining that the IRS determination had preclusive effect on the question of her status as an employee under the FLSA and D.C. labor laws. At the time she moved for summary judgment, she relied solely on the IRS determination letter; she did not submit documents relating to the assessment and levy because the appellees had failed to produce them. The trial court denied the motion for partial summary judgment because (1) Morrison failed to produce evidence that the IRS ever investigated the matter beyond its initial determination or that IPC paid any assessed taxes and penalties; (2) the IRS did not act in a judicial capacity when it issued the determination letter; and (3) according to the definition of "employee" under IRS regulations Morrison was not entitled to any "employee" rights under the FLSA, the D.C. Wages Law or the D.C. Minimum Wage Act. *See Morrison v. International Programs Consortium, Inc.*, No. 97–1837, slip op. at 5–8 (D.D.C. filed Feb. 4, 2000). Morrison appeals this ruling.

The case was then tried before a jury. At trial the magistrate judge refused to admit documents detailing the IRS assessment and levy because "the court finds that they are not relevant to any issue which would be before the jury." JA 267. This is the second ruling Morrison appeals. At the conclusion of Morrison's case the judge provided Hanlon, who was representing herself, a copy of Fed.R.Civ.P. 50 and granted Hanlon's subsequent motion

---

**1.** Morrison sued Hanlon as well as IPC because IPC's corporate charter had been revoked by the District of Columbia for nonpayment of the annual fee. The charter was not restored by the time of trial.

for judgment as a matter of law on all four counts, concluding that Morrison presented no evidence to support her contention that she was an employee of IPC. JA 299–303. This is the final ruling Morrison appeals.

## II. ⱽ Analysis

We review *de novo* the trial court's ruling on Morrison's motion for summary judgment, *see Crawford v. Signet Bank,* 179 F.3d 926, 928 (D.C.Cir. 1999), as well as its grant of judgment as a matter of law to the appellees. *Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 827–28 (D.C.Cir.1988); *McNeal v. Hi–Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 640–41 (D.C.Cir.1988). We review findings of fact for clear error, Fed. R.Civ.P. 52(a); *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1045 (5th Cir.1987), but review *de novo* questions of law, including the question of employee status. *See Mr. W Fireworks,* 814 F.2d at 1045; *see also United States v. Bridges,* 175 F.3d 1062, 1065 (D.C.Cir.1999). Finally, our review of the trial court's evidentiary ruling is for abuse of discretion. *See* FRE 103(a); *see also United States v. Clarke,* 24 F.3d 257, 265–67 (D.C.Cir.1994).

### A. Summary Judgment

Morrison moved for summary judgment on counts I, II and III of her complaint on the ground that the IRS had preclusively decided whether Morrison was an IPC employee under federal and D.C. labor law. The district court denied the motion. We affirm.

The United States Supreme Court has "long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *Astoria Fed. Savings & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Acting in a judicial capacity includes utilizing "procedure that seems an adequate substitute for judicial procedure." 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4475, at 764–65 (1981). There is no evidence that the issue of Morrison's employment status was "actually and necessarily litigated and decided in a prior final judgment." *See Nasem v. Brown,* 595 F.2d 801, 805 (D.C.Cir.1979). The IRS was careful not to decide the accuracy of the information Hanlon presented to it. *See* Letter from Michael M. Greenspan, IRS District to Kathleen M. Hanlon (July 1, 1996), *reprinted in* JA 356. We do not accept Morrison's assertion that Hanlon's right of appeal from the ruling converted the IRS determination into an adjudication of Morrison's employment status under the FLSA or D.C. labor laws.[2] Accordingly,

---

**2.** Morrison's reliance on the order in *Alten v. Ellin & Tucker, Chartered,* 854 F.Supp. 283 (D.Del.1994), does not carry the day for her. In *Alten* the district court gave preclusive effect to an IRS assessment based on the taxpayer's wilful failure to meet his tax obligations. When the taxpayer sought indemnification from his accountants, the district court

granted the defendants' motion for summary judgment on the ground that one who "wilfully" violates the law is not entitled, as a matter of law, to indemnification. *Id.* at 292. In giving the IRS assessment preclusive effect, the court explained that the IRS had acted in a judicial capacity and that the taxpayer, by choosing to sue for indemnification instead of

the IRS determination is not entitled to preclusive effect on the issue of Morrison's employment status and the district court properly denied Morrison's motion for summary judgment on counts I, II and III.

## B. Evidentiary Ruling

■ The district court excluded as irrelevant IPC's submissions to the IRS as well as documents relating to the IRS assessment and levy on IPC's bank account. JA 268. Morrison argues that the evidence was relevant to the issue of the preclusive effect of the IRS action. She does not argue that the evidence was relevant to any other issue, including whether she was an employee under the economic reality test. Because the IRS action had no preclusive effect on whether Morrison was an employee under the FLSA and D.C. labor laws, its exclusion was proper; the evidence was not relevant to any issue before the court. Fed.R.Evid. 402.

## C. Judgment as a Matter of Law

■ Rule 50(a) provides that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against the party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed.R.Civ.P. 50(a). At the close of Morrison's case, the

magistrate judge, after furnishing Hanlon a copy of Rule 50, entertained a motion for judgment as a matter of law. The judge then ruled from the bench that "there is no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff." JA 299. The court explained that during July 1995 Morrison was not an employee under the economic reality test set forth by the Second Circuit in *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir.1988). In so doing the court emphasized, *inter alia*, the following facts:[3] (1) Morrison submitted her invoices on her own letterhead, (2) she believed that she was an independent contractor, (3) IPC filed 1099 tax forms, rather than W–2 tax forms, for her, (4) she received only minimal direction from Hanlon, (5) there was no evidence that Hanlon was present in the office on the days in which Morrison worked, (6) there was no evidence that Hanlon required Morrison to report on a daily basis, (7) Morrison worked at home on "some occasions," (8) there was no evidence that Morrison's work was an integral part of IPC's business and (9) she had only one task for July 1995, which was of limited scope and duration.

■ The FLSA defines "employee" as "any individual employed by an employer." To "employ" includes "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), 203(g). "The definition is necessarily a broad one in accordance with the remedial purpose of the Act." *Superior Care*, 840 F.2d at 1058. The statutory definition, however, provides no *specific* guidance.

appealing the IRS assessment, attempted to bypass the prescribed appeal procedures of the agency. *Id.* The order, however, does not address the question whether an IRS assessment is entitled to collateral estoppel effect on the issue Morrison presents.

**3.** Whether an individual is an "employee" within the meaning of the FLSA is a legal

question. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999); *Castillo v. Givens*, 704 F.2d 181, 185 (5th Cir.1983). Nevertheless, "[a]ny subsidiary factual issues leading to this conclusion are, of course, questions of fact for the jury." *Castillo*, 704 F.2d at 185 n. 9.

In *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961), the Supreme Court directed courts to look at "economic reality" rather than "technical concepts" to determine employment status under the FLSA. The "test considers the extent to which typical employer prerogatives govern the relationship between the putative employer and employee." *Henthorn v. Department of Navy*, 29 F.3d 682, 684 (D.C.Cir.1994). In *Henthorn* we explained that we ask "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation omitted). In *Superior Care*, the Second Circuit case relied upon by the magistrate judge, the court set forth a different, although similar, set of factors. These include: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship and (5) the extent to which the work is an integral part of the employer's business. *Superior Care*, 840 F.2d at 1058–59. No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence. *See Herman*, 172 F.3d at 139; *Superior Care*, 840 F.2d at 1059; *see also Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311–12 (5th Cir.1976) ("It is *dependence* that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." (emphasis original)).

Under Rule 50 the court was required to view the facts in the light most favorable to Morrison. So viewing the facts manifests that IPC "had the power to hire and fire" her, "supervised and controlled [her] work schedules or conditions of employment" and "determined the rate and method of payment." *Henthorn*, 29 F.3d at 684. The evidence also showed that Hanlon and IPC exercised a considerable "degree of control" over Morrison and that she had little "opportunity for profit or loss" and made no "investment in the business." *Superior Care*, 840 F.2d at 1058.

▮▮▮▮▮ The district court stressed Morrison's description of herself as a consultant. "[F]acile labels and subjective factors[, however,] are only relevant to the extent that they mirror 'economic reality.'" *Mr. W Fireworks*, 814 F.2d at 1044; *cf. Superior Care*, 840 F.2d at 1059 (employer's admission that individual was employee is "highly probative"). And Morrison's self description may not reflect economic reality. For example, Morrison presented evidence that she did "everything from recruiting, planning meetings, going to the bank, going to the post office, doing administrative things, [and] watering the plants." JA 63. She also testified that she was required to prepare daily activity sheets as well as weekly "to do lists" and summaries of her weekly activities. *See* JA 66–70, 314, 317, 318. Although the trial court found that Hanlon exercised infrequent supervision, Morrison's testimony, the "to do lists" (Plaintiff's Exhibit 7) and Hanlon's request for a weekly plan of activities (Plaintiff's Exhibit 11) indicate that Hanlon exercised more than minimal supervision. *See* JA 314, 318. Supervision need not be frequent

under the economic reality test. *See Superior Care*, 840 F.2d at 1060. Morrison introduced evidence, including requests for time off, that tended to show that Hanlon regulated Morrion's hours. JA 67–68, 315, 316. In fact, Morrison was ultimately fired, in part, for taking "Monday and Tuesday" off. *See* JA 323. The fact that Morrison sometimes worked irregular hours or that she worked at home does not preclude a finding that she was an employee under the economic reality test. Likewise, Hanlon's absence from the office during the time Morrison performed her work is largely irrelevant in view of the restrictions Hanlon otherwise imposed on Morrison's work schedule. Hanlon paid Morrison on a daily or hourly basis, including overtime pay on occasion. *See* JA 77, 325–26. Finally, although Morrison was assigned a specific task for July 1995 (the Moldova project), she testified that she continued to perform her "regular duties" and kept working for IPC after the tour ended on July 21st. *See* JA 71–72, 116–17, 328–29, 335. Based on our review of the record, we conclude that the district court erroneously granted the appellees' motion for judgment as a matter of law on all counts of Morrison's complaint.[4]

### III.  Conclusion

We affirm the trial court's denial of Morrison's motion for partial summary judgment as well as the court's evidentiary ruling. We reverse, however, its grant of judgment as a matter of law to the appellees and remand for further proceedings.

*So ordered.*

---

4. Moreover, the district court erroneously dismissed count IV of Morrison's complaint, which sought reimbursement for expenditures she made during the Moldova project. Reimbursement for her expenses did not depend on her work status at IPC.